```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CAUSE NO. 2:96-CV-095 |
| v. ) | |
| ) | |
| THE STATE OF INDIANA, et al., ) | |
| ) | |
| Plaintiff-Intervenors, ) | |
| ) | |
| v. ) | |
| ) | |
| BP EXPLORATION & OIL CO., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter is before the Court on the "Unopposed Motion for Leave to File and Serve Supplemental Third Amended Complaint" (DE #154), filed jointly by Plaintiff and Defendants on February 19, 2009. For the reasons set forth below, the motion is **GRANTED**.

BACKGROUND

In 1996, the Government initiated a civil action against BP Exploration & Oil Company ("BP"), Amoco Oil Company ("Amoco"), and Atlantic Richfield Company ("Arco") for alleged violations of the Resource Conservation and Recovery Act ("RCRA"), the Clean Air Act

("CAA"), the Emergency Planning and Community Right-to-Know Act ("EPCRA"), and the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). On June 30, 1998, the Government filed a First Amended Complaint in which it added additional claims under the CAA (DE #22). BP entered negotiations with the Government to resolve the litigation. During the course of negotiations, the parties sought to remedy alleged violations at facilities in seven other states, including: Ohio, Washington, Texas, Virginia, North Dakota, Utah, and California.

On January 22, 2001, the Government filed a Second Amended Complaint which included the allegations regarding the facilities in the additional states (DE #85). Contemporaneously with filing the Second Amended Complaint, the Government lodged a proposed Consent Decree (DE #83), and, after publishing a notice of lodging of the Consent Decree in the Federal Register, subsequently moved for entry of the Consent Decree.

The Consent Decree set forth a comprehensive program of compliance measures for BP to undertake in order to dramatically reduce emissions of oxides of nitrogen ("NOx"), sulfur dioxide ("SO2"), particulate matter ("PM"), carbon monoxide ("CO"), benzene, and volatile organic compounds ("VOCs") from each of BP's domestic refineries.

On June 5, 2001, this Court held a hearing regarding the Consent Decree (DE #119). At the conclusion of the hearing, this

Court found that each of the requirements necessary to approve the Consent Decree had been met with the exception of the notice requirement and thus ordered further briefing on the notice issue. After reviewing the notice briefing, this Court approved the Consent Decree on August 29, 2001 (DE #129 & 130). Judgment in accordance with the Consent Decree was entered on August 30, 2001 (DE #131).[1] However, through the Consent Decree, the Court expressly "retain[ed] jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of the Consent Decree...until the Consent Decree terminates." (DE #130-1, ¶64.)

Following entry of the Consent Decree, BP Products North America Inc. (formerly known as Amoco and hereinafter referred to as "BP North America") succeeded to the interests of BP. (*See* DE #154-2, p. 4). BP North America is the current owner and operator of the petroleum refineries in Texas City, Texas (the "Texas City Refinery"); Whiting, Indiana; Toledo, Ohio; Carson, California; and Cherry Point, Washington. (*Id.*) Between 2001 and 2007, the Court entered five amendments to the original Consent Decree.

The Government filed the instant motion pursuant to Federal Rule of Civil Procedure 15(d). According to the Government's motion, "the Texas City Refinery has failed to comply with the

---

[1] The Government filed a Third Amended Complaint on July 18, 2001 (DE #128); the consent decree resolved all of the claims in the third amended complaint.

Benzene Waste NESHAP compliance option (the "2 Mg Compliance Option") required under Paragraph 19.A.i. of the Consent Decree." (*Id*.) Based on these violations, the Government now seeks to add several supplemental claims.[2] The relief sought by the Government under the Supplemental Third Amended Complaint "pertains solely to the Texas City Refinery and is based solely upon the allegations of Supplemental Claims for Relief Twenty-Six through Thirty-Eight herein and BP [North America's] violations of the Consent Decree." (*Id*. at 5.) Specifically, the proposed Supplemental Third Amended Complaint includes:

> 1) Two supplemental claims under the Benzene Waste NESHAP regarding the Texas City Refinery's failure to meet the 2 Mg Control Option since the Original Consent Decree was entered, as well as the Texas City Refinery's failure to meet the 1 Mg Limit in specified years (these two claims are hereinafter collectively referred to as the "Supplemental Benzene Waste NESHAP Claims"). *See* Supplemental Third Am. Compl., Twenty-Sixth and Twenty-Seventh Supplemental Claims for Relief;
>
> 2) Eight supplemental claims under the CFC Regulations regarding repair and testing requirements for leaks of ozone-depleting refrigerants (a.k.a. ozonedepleting substances) from cooling appliances at the Texas City Refinery. *See* Supplemental Third Am. Compl., Twenty-Eighth through Thirty-Fifth Supplemental Claims for Relief; and
>
> 3) Three supplemental claims under the

---

[2] The Supplemental Claims for Relief are set forth as claims Twenty-Six through Thirty-Eight in the Supplemental Third Amended Complaint. (DE #154-2, pp. 54-69.)

4

> Asbestos NESHAP regarding the handling and management of asbestos-containing waste materials generated during renovation activities at the Texas City Refinery. *See* Supplemental Third Am. Compl., Thirty-Sixth through Thirty-Eigth Supplemental Claims for Relief.

(DE #155, p. 4.) The motion is unopposed, and the proposed Sixth Amendment to Consent Decree (DE #153-2)[3], filed by the Government on the same day as the instant motion, "resolves all supplemental claims alleged in the Supplemental Third Amended Complaint, as well as BP [North America's] violations of the original Consent Decree's Benzene Waste NESHAP provisions." (DE #155, p. 2.)

DISCUSSION

Federal Rule of Civil Procedure 15(d) states the following:

> (d) Supplemental Pleadings. On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense.

Fed.R.Civ.P. 15(d). Supplemental pleadings differ from amended pleadings in that the former pertain to "events subsequent to the

---

[3] The Sixth Amendment to Consent Decree was lodged with the Court on February 19, 2009. The Court was not required to take action until the 30-day period of public comment process was complete. In this instance, no comments were received, and the Government moved the Court for entry of the Sixth Amendment to the Consent Decree on May 11, 2009 (DE #156). The Sixth Amendment to Consent Decree was entered by the Court on September 18, 2009 (DE #160).

5

pleading to be altered and merely represent additions to or continuations of the earlier pleadings." 6A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure § 1504, at 183-84 (2d ed. 1990). However, the "standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical. In either situation, leave should be freely granted, and should be denied only where good reason exists." *Franks v. Ross*, 313 F.3d 184, 198 n. 15 (4th Cir. 2002)(quotation marks and internal citations omitted).

In its most broad sense, Rule 15(d) is a tool of judicial economy and convenience. As described by one appellate court:

> [i]t is a useful device, enabling a court to award complete relief, or more nearly complete relief, in one action, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted. So useful they are and of such service in the efficient administration of justice that they ought to be allowed as of course, unless some particular reason for disallowing them appears, though the court has the unquestioned right to impose terms upon their allowance when fairness appears to require them.

*New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28-29 (4th Cir. 1963). It thus follows that district courts have broad discretion in granting or denying a motion to supplement a complaint under Rule 15(d). *See Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329, 1338 (7th Cir. 1985); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985); *Franks*, 313 F.3d at 198 n. 15; *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).

Furthermore, the Supreme Court has recognized that in certain circumstances, a court is within its discretion to allow parties to supplement complaints in order to allege new claims based on distinct events in matters that have reached final disposition. *Griffin v. County School Bd. of Prince Edward County*, 377 U.S. 218, 226-27 (1964) (court allowed supplemental pleadings that added new parties and relied on "transactions, occurrences, and events which had happened since the action had begun," because the transactions were alleged to have "occurred as a part of continued, persistent efforts to circumvent [the original] holding.") According to the Court in *Griffin*:

> Rule 15(d) of the Federal Rules of Civil Procedure plainly permits supplemental amendments to cover events happening after suit, and it follows, of course, that persons participating in these new events may be added if necessary. Such amendments are well within the basic aim of the rules to make pleadings a means to achieve an orderly and fair administration of justice.

*Id*. at 227. Such post judgment events "need not arise out of the same transaction or occurrence as the original claim, so long as they bear 'some relationship' to the original pleading." *Habitat Educ. Center, Inc. v. Kimbell*, 250 F.R.D. 397, 402 (E.D. Wis. 2008)(citing 3 James Wm. Moore, Moore's Federal Practice § 15.30 (3d ed. 2008)). "To force plaintiffs to file new lawsuits to litigate what are essentially continuations of their original suits would waste judicial resources." *Id*. As the court in *Kimbell*

7

correctly pointed out, controlling analogous cases include those "in which courts allowed plaintiffs to file supplemental complaints to enforce ongoing injunctions or consent decrees." *Id.* (*citing Griffin*, 377 U.S. at 226-27; *Keith*, 858 F.2d at 473-76; *Poindexter v. La. Fin. Assistance Comm'n*, 296 F.Supp. 686, 688-89 (D. La. 1968).

In determining a motion to supplement under Rule 15(d), a court, in its discretion, may look to several factors including, but not limited to, the following: (1) the extent to which the original and supplemental complaints are related; (2) whether the district court has retained jurisdiction over the case; (3) whether any prior court orders or decrees imposed affirmative duties upon the parties; (4) whether there is evidence of delay, bad faith or dilatory motive on the part of the movant; (5) whether the supplement would impose undue prejudice upon an opposing party; and, overall, (6) whether allowing supplementation would serve the interests of judicial economy. *See San Luis & Delta-Mendota Water Authority v. U.S. Dept. of Interior*, 236 F.R.D. 491, 497 (E.D. Cal. 2006)(*citing Foman v. Davis*, 371 U.S. 178, 182 (1962); *Planned Parenthood of Southern Arizona v. Neely*, 130 F.3d 400, 402-03 (9th Cir. 1997); *Keith*, 858 F.2d at 473-76).

Turning to the matter at hand, the Court has reviewed the plain language of Federal Rule of Civil Procedure 15(d), the applicable case law, and several discretionary factors in

conjunction with the Unopposed Motion for Leave to File and Serve Supplemental Third Amended Complaint.  First, as the Government correctly points out, all of the supplemental counts alleged in the Supplemental Third Amended Complaint satisfy the express requirements of Rule 15(d) in that they relate to transactions, occurrences, or events that happened after the date that the Third Amended Complaint was filed.[4]

Next, the Court concludes that the original and supplemental complaints are appropriately linked.  The Court agrees with the Government that, not only do the Supplemental Benzene Waste NESHAP Claims have a relationship to the Third Amended Complaint and the Consent Decree, but they are also related to a "focal point" of the Government's original action.[5] *See Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988)(affirming the district court's decision to grant a supplemental complaint after entry of a consent decree because the supplement related to the "focal point" of the original complaint and consent decree).  The Court agrees that the supplemental claims are essentially a continuation of the

---

[4] The Third Supplemental Complaint was filed on July 18, 2001 (DE #128).

[5] "The [Government's] original Benzene Waste NESHAP claims addressed violations of the 2 Mg Control Option under the Benzene Waste NESHAP at the Texas City Refinery. See Third Am. Compl., Eighteenth Claim for Relief, ¶¶'s 186-87. The Original Consent Decree resolved these original claims, see Original Consent Decree, § XV, ¶ 73.A.ii.b, in part by requiring the Texas City Refinery to comply with the 2 Mg Control Option and with specific corrective measures designed to facilitate compliance with the Benzene Waste NESHAP, see Original Consent Decree, ¶ 19.A.i.; see also generally id. at ¶ 19. Now the United States asserts that the Texas City Refinery has violated the Original Consent Decree and the Benzene Waste NESHAP." (DE #155, p. 8-9.)

9

Government's original action to address the issues regarding Benzene Waste NESHAP violations at the Texas City Refinery.

Additionally, the new supplemental claims arising under the CFC Regulations and Asbestos NESHAP are appropriate to bring as supplemental claims in this matter. These claims have a close enough affiliation to the original action and to the consent decree to properly come within the scope of Rule 15(d). *See Habitat Educ. Center, Inc. v. Kimbell*, 250 F.R.D. 397, 402 (E.D. Wis. 2008)(permitting supplemental pleading where movant sought to add new events that bore more than "some relationship" to the original pleading). Here, the new claims pertain to violations by the Texas City Refinery and can be seen as extensions related the original action.

Perhaps more importantly, the interests of judicial economy would be best served by allowing these supplemental claims. As the Government correctly points out, the "Supplemental Benzene Waste NESHAP Claims are more significant than the supplemental CFC and asbestos claims in terms of the magnitude of the deviation from regulatory standards, the potential for harm to public health and the environment, their duration, and the injunctive relief secured under the Sixth Amendment to the Consent Decree." (DE #155, p. 10.) Allowing the less significant CFC Regulations and Asbestos NESHAP claims to be filed within the Supplemental Third Amended Complaint is appropriate under Federal Rule of Civil Procedure

15(d) as it "facilitates the efficient administration of justice." *Kimbell*, 250 F.R.D. at 402 (*citing Griffin v. County Sch. Bd. of Prince Edward County*, 377 U.S. 218, 226-27 (1964)). In this instance, bringing the supplemental claims before this Court would "avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28 (4th Cir. 1963).

The Court has also considered the related facts that jurisdiction was not relinquished by this Court when final judgment was entered and that the proposed Supplemental Third Amended Complaint alleges violations of prior Court directives. As noted above, the Court expressly "retain[ed] jurisdiction of this matter for the purposes of implementing and enforcing the terms and conditions of the Consent Decree...until the Consent Decree terminates." (DE #130-1, ¶64.) In this instance, as in several similar cases, the original Consent Decree imposed affirmative duties upon the parties that the Court has retained jurisdiction to enforce. *See Griffin*, 377 U.S. at 226-27; *Keith*, 858 F.2d at 467; *Poindexter v. Louisiana Fin. Assistance Comm'n*, 296 F.Supp. 686, 693 (E.D. La. 1968), *aff'd sub nom. Louisiana Edu. Comm'n for Needy Children v. Poindexter*, 393 U.S. 17 (1968). This Court is familiar with the long-standing dispute between the parties, with the terms of the Consent Decree, and with the matter as a whole. Thus, allowing the supplemental claims, which are related to the both

original action and the Consent Decree, is a proper means for addressing the alleged violations described herein.

Finally, the Court notes that there is no evidence of bad faith or dilatory motive on the part of the movant. In fact, as the motion is unopposed and the parties have lodged the Sixth Amended Consent Decree[6], which resolves all issues raised in the proposed supplemental pleadings, it is clear that allowing the Supplemental Third Amended Complaint would not impose undue prejudice upon any party.

Overall, it is clear that granting the motion best serves the interests of judicial economy and is appropriate under Federal Rule of Civil Procedure 15(d).

CONCLUSION

Therefore, for the reasons set forth above, the "Unopposed Motion for Leave to File and Serve Supplemental Third Amended Complaint" (DE #154), filed by Plaintiff on February 19, 2009 is **GRANTED**.

**DATED: September 18, 2009**          /s/RUDY LOZANO, Judge
                                       **United States District Court**

---

[6] The Sixth Amendment to the Consent Decree was entered by the Court on September 18, 2009 (DE #160).